IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA HALL and WALTER MCCOMBS, on )
their own behalf and for all others similarly )
situated, )
                Plaintiffs, )
               )
     vs )        Civil Action No. 11-213
               )        Magistrate Judge Mitchell
GUARDSMARK, LLC, )
             Defendant. )

MEMORANDUM AND ORDER

      Plaintiffs, Patricia Hall and Walter McCombs, bring this action alleging that Defendant,

Guardsmark, LLC, violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 (FLSA), by

requiring them to work as security guards for more than 40 hours per week without submitting

such additional time for compensation.  They allege that they were required to record only their

official shift times, rather than time actually worked; that they were required to be at their post

prior to the start of their shift without being compensated for such time; that they were similarly

required to remain at their post after their shift ended without being compensated for such time;

and that they were required to wear a uniform that they had to clean at home, without being

compensated for the time spent on this task.

      Presently before the Court for resolution is Plaintiffs' motion for an order authorizing

notice to similarly situated persons pursuant to 29 U.S.C. § 216(b).  For the reasons that follow,

Plaintiffs have failed to demonstrate that they meet the standard for conditional certification and

therefore this motion will be denied.

    Facts

      Hall worked as a full-time security guard on various shifts for Guardsmark from August

2008 to July 2009. (Hall Decl. ¶ 2.)[1] McCombs worked as a full-time security guard on various

shifts for Guardsmark from August 2006 to August 2008. (McCombs Decl. ¶ 2.)[2] Both

Plaintiffs state that Guardsmark disseminated common orders, regulations and instructions to all

security officers in two manuals entitled "Guardsmark Means This to You" ("GMTTY")[3] and

"General Orders Regulations and Instructions for Uniformed Personnel" ("GORI")[4] and that they

were obligated to comply with GMTTY and GORI pursuant to their employment agreements[5];

that Guardsmark maintained a common written policy that required all security officers to track

their hours worked by entering their approved shift start and end times on a Daily Activity

Report form; that Guardsmark maintained a common written policy that required all security

officers to track their hours worked by entering "only the number of hours they were authorized

to work" in a "true hours worked" box on the Daily Activity Report; that barring an express

authorization of overtime work, all Guardsmark security officers regularly complied with these

policies by preparing Daily Activity Reports that showed eight hours worked per shift; that

Guardsmark maintained a common written policy that required all security officers to complete a

Weekly Time Record form showing the total number of hours each security officer was

authorized to work each week; that Guardsmark supervisors regularly complied with this policy

by preparing Weekly Time Records that showed they worked eight hours per shift; and that

Guardsmark maintained a common practice of paying all security officers on the basis of their

assigned shifts (i.e., eight hours per shift) rather than on their actual work start and end times.

(Hall Decl. ¶¶ 4-10; McCombs Decl. ¶¶ 4-10.)

---

[1] Pls.' Mot. (ECF No. 49) Ex. A.
[2] ECF No. 49 Ex. B.
[3] ECF No. 49 Ex. D.
[4] ECF No. 49 Ex. C.
[5] ECF No. 49 Ex. E.

Plaintiffs state that they worked under a common written policy that required all security officers to arrive early for work so that shift transitions would run smoothly and on time, posts would not experience a lapse in security during shift changes and Guardsmark could minimize overtime hours and wages charged to its clients; that they regularly arrived at work at least 15 minutes before their scheduled shift start time to perform pre-shift work that included receiving pass down instructions, checking equipment, reviewing post orders, collecting schedules, meeting with supervisors, guarding, monitoring, patrolling, inspecting and surveilling; that Guardsmark knew they regularly arrived early because their supervisors regularly suffered and permitted them to perform this work, their supervisors saw them performing this work and regularly reviewed their time and pay records; that Guardsmark did not effectively prevent them from performing "off-the-clock" pre-shift work it did not want performed, accurately track the amount of "off-the-clock" pre-shift work they actually performed or pay all wages they were owed for such work; and that "[f]rom my experience working with and talking to my co-workers, I believe that other Guardsmark security officers were subjected to the same pre-shift policies and procedures, followed them like I did, and, as a result, were denied pay owed for pre-shift work."  (Hall Decl. ¶¶ 11-16; McCombs Decl. ¶¶ 11-16.)

Similarly, Plaintiffs state that Guardsmark maintained a common written policy or practice that prohibited all security officers from leaving their post before their approved shift end time so that all security officers would remain on duty throughout their entire shift, be available to provide pass down instructions to their relief workers and so posts would not experience a lapse in security during shift changes; that they regularly worked about 15 minutes past their scheduled shift end time to perform post-shift work that included providing pass down instructions, putting away equipment, reviewing and completing their daily logs and event report

and confirming their next work assignment; that Guardsmark knew they regularly stayed at their posts after their authorized shift end-time because their supervisors regularly suffered and permitted them to perform this work, their supervisors saw them performing this work and regularly reviewed their time and pay records; that Guardsmark did not effectively prevent them from performing "off-the-clock" post-shift work it did not want performed, accurately track the amount of "off-the-clock" pre-shift work they actually performed or pay all wages they were owed for such work; and that "[f]rom my experience working with and talking to my co-workers, I believe that other Guardsmark security officers were subjected to the same post-shift policies and procedures, followed them like I did, and, as a result, were denied pay owed for post-shift work." (Hall Decl. ¶¶ 17-22; McCombs Decl. ¶¶ 17-22.)

Finally, Plaintiffs state that Guardsmark maintained a common written policy that required all security officers to report to work wearing certain standard uniform items; that Guardsmark maintained a common written policy that made all security officers responsible for the care and maintenance of their uniform and equipment items; that Guardsmark maintained a common written policy that required all security officers to keep their uniform neat, clean and well pressed at all times; that Guardsmark maintained a common policy or practice prohibiting its security offices from maintaining their uniform components "on the clock" or at their work sites; that they regularly preformed between one and two (Hall) or between one and three (McCombs) hours of "off-the-clock" uniform maintenance each week without compensation including washing, spot cleaning, drying and ironing their work uniforms and shoes; that Guardsmark knew that its security offices regularly performed "off-the-clock" uniform maintenance work because such work could not be completed during assigned work hours or at assigned work locations, their supervisors regularly suffered and permitted them to perform this

work, their supervisors saw the results of this work and regularly reviewed their time and pay records; that Guardsmark did not effectively prevent them from performing "off-the-clock" uniform maintenance work it did not want performed, require its security officers to maintain a contemporaneous record of their uniform maintenance work or pay all wages they were owed for such work; and that "[a]s a result of my experience working with and talking to and observing my co-workers, I believe that Guardsmark's other employees were subjected to the same uniform maintenance work policies and practices, and affected the same way by them."  (Hall Decl. ¶¶ 23-32; McCombs Decl. ¶¶ 23-32.)

Plaintiffs indicate that GMTTY stated that security guards would be assigned a "normal work schedule" of eight hours per day, forty hours per week (GMTTY at 40; Turner Dep. at 36[6]); that Guardsmark's official policy was to pay its employees "for all hours worked" (GMTTY at 12, 40); that the employment agreement indicated that they were prohibited from "reporting to the premises or facilities of a client prior to [their] scheduled starting time or remaining [at work] after scheduled quitting time" (ECF No. 49 Ex. E ¶ 6); that overtime hours had to be approved in advance (ECF No. 49 Ex. J) and that such hours were tracked by Guardsmark (ECF No. 49 Ex. K); that employees were required to keep track of all hours worked by entering their approved shift start time and end times on a Daily Activities Report (GORI at 20, 85; Turner Dep. at 59-60, 67-69, 73-74); that barring an express authorization of overtime work, Plaintiffs and other security guards complied with these policies by preparing Daily Activities Reports that showed their time worked as eight hours, the length of their assigned shifts (ECF No. 49 Ex. M); that employees were required to complete Weekly Time Record forms showing their total number of authorized hours each week (GORI at 25; ECF No.

---

[6] ECF No. 49 Ex. F.

49 Ex. L; Martin Dep. at 50-52, 56-58, 85, 133[7]) and that they regularly completed these Weekly Time Records showing that they worked eight hours per shift (ECF No. 49 Ex. O); that Guardsmark maintained a common written policy requiring supervisors to compare the hours recorded on each security officer's Daily Activities Report with the hours recorded on their Weekly Time Records at the end of each week and report any discrepancies between their scheduled hours and their actual hours (Turner Dep. at 104-07; ECF No. 49 Exs. L, P); that Guardsmark used the "approved" shift lengths showing on security officers' Weekly Time Records to calculate their wages (Turner Dep. at 28-32, 71; Martin Dep. at 30-31, 35; ECF No. 49 Ex. Q); that the employment agreement stated that "failure to properly complete Daily Reports that agree with the employee's Weekly Time Record may be cause for Guardsmark to withhold reimbursement to the employee for that period" (ECF No. 49 Ex. E ¶ 14); that Guardsmark maintained a common written policy requiring all security officers to be on post ready to start their tours of duty at the assigned commencement of duty shifts (GORI at 22; Turner Dep. at 21-22, 28-32, 60-61; Martin Dep. at 42-43); that Guardsmark did not maintain any system or mechanism to cross-check or confirm the actual time that Plaintiffs arrived at their job site or began performing work-related duties (Turner Dep. at 32); that Guardsmark maintained a common policy or practice prohibiting security guards from leaving their posts before their approved shift end time (Turner Dep. at 33-34); that Guardsmark did not maintain any system or mechanism to cross-check or confirm the actual time guards left their job site or stopped performing work-related activities (Turner Dep. at 32); that Guardsmark maintained a common written policy that required security guards to report to work wearing certain "standard uniform items" (GORI at 18; GMTTY at 11; Turner Dep. at 58-59; ECF No. 49 Ex. R); that

---

[7] ECF No. 49 Ex. N.

6

Guardsmark maintained a common written policy making security guards "responsible for the proper maintenance and care of uniform and equipment items" issued to them (Am. Answer ¶¶ 11(k), 44; GMTTY at 11); that Guardsmark maintained a common written policy requiring security guards to keep their uniform "neat, clean and well pressed at all times" (Am. Answer ¶¶ 11(k), 44; GORI at 162-80; Martin Dep. at 115-17); that Guardsmark maintained a common policy or practice of providing security guards with fewer uniforms than the number of shift they worked each week (Am. Answer ¶ 46); that Guardsmark maintained a common policy or practice of prohibiting security guards from maintaining their uniform components "on the clock" or at their work sites and as a result these chores had to be performed off-the-clock and at home (Martin Dep. at 62, 101, 109-10); and that Guardsmark suffered and permitted regular off-the-clock uniform maintenance (Martin Dep. at 116).

Defendant does not contest the statements made in its documents. However, it points out that some of the statements in Plaintiffs' declarations are directly contradicted by the testimony they gave at their depositions. For example, at Hall's deposition, the following exchange occurred:

Q. You're testifying that you had to be there 15 minutes early?

A. Every day.

…

Q. Do you recall testifying that you knew the policy was that security officers were not supposed to arrive until the start of their shift?

A. That's their policy, but we were told by Katie Bohnke that we had to be there 15 minutes early because we had to have everything ready at 8.

Q. So you were aware that Guardsmark's policy was that security officers were not supposed to arrive until the start of their shift; correct?

A. That's what their policy said, but we were told to be there 15 minutes early by

our main supervisor from Pittsburgh.

Q. Who was that?

A. Katie Bohnke.

…

Q. When did Katie tell you that?

A. The day she hired me.

(Hall Dep. at 14-16.)  She also testified that she had no evidence that Bohnke told anyone else to arrive 15 minutes early.  (Hall Dep. at 33.)  She did not have any interaction with any other security officers at other sites.  (Hall Dep. at 99.)

McCombs testified similarly that Bohnke told him the day he was hired that he needed to arrive 15 minutes before his shift began and that he was not permitted to put this information on his time record.  (McCombs Dep. at 61-62, 117.)  On the other hand, McCombs testified that he never had any discussions with any of his supervisors other than Bohnke about having to report to work 15 minutes early.  (McCombs Dep. at 107.)  And when McCombs became a supervisor, he never told Hall or any of his other employees that they need to report to work 15 minutes early.  (McCombs Dep. at 35-37, 107-08, 109, 115-16; Hall Dep. at 24.)  McCombs had no interaction with security guards at other sites.  (McCombs Dep. at 105.)  Thus, Defendant contends that, despite the assertions made in Plaintiffs' declarations, their actual claim is that Guardsmark's written policies required them to arrive at their shift on time, but Katie Bohnke told them to arrive 15 minutes early and not to put this information on their time records.

With respect to post-shift work, McCombs testified that he was aware that Guardsmark's policy was that security guards were not supposed to stay after their shift was over and they were properly relieved and that he communicated this directive to his subordinate employees.

Moreover, he testified that he once disciplined Hall for remaining on her shift after it had ended. (McCombs Dep. at 43-44, 60; ECF No. 58 Ex. 14.)

Procedural History

Plaintiff Hall filed this action on February 16, 2011 (ECF No. 1) and on May 26, 2011, she and Plaintiff McCombs filed a First Amended Complaint (ECF No. 17) and McCombs filed his notice of consent pursuant to 29 U.S.C. § 216(b) (ECF No. 18).  Following an initial case management conference, the parties conducted discovery on the conditional certification issue.  On May 11, 2012, Plaintiffs filed a motion for an order authorizing notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) (ECF No. 49).  The motion has been fully briefed and a hearing was held on August 1, 2012.

FLSA Collective Actions

The FLSA states that employers who require their employees to work more than forty hours per week must pay them for that excess time at a rate not less than one and one-half times the regular rate at which they are employed.  29 U.S.C. § 207(a)(1).  An employee who is not paid for this excess time may bring suit under the FLSA.  29 U.S.C. § 216(b).

As described recently by the Court of Appeals for the Third Circuit:

> Enacted in 1938, the FLSA, 29 U.S.C. § 201 et seq., was designed "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Under the "collective action" mechanism set forth in 29 U.S.C. § 216(b), an employee alleging an FLSA violation may bring an action on "behalf of himself ... and other employees similarly situated," subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."
>
> …
>
> In deciding whether a suit brought under § 216(b) may move forward as a

collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. See Wright v. Lehigh Valley Hosp., No. Civ. A 10–431, 2010 WL 3363992, at *3–4, 2010 U.S. Dist. LEXIS 86915, at *7–10 (E.D. Pa. Aug. 24, 2010) (canvassing cases).

Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. See Smith v. Sovereign Bancorp, Inc., No. 03–2420, 2003 WL 22701017, at *3, 2003 U.S. Dist. LEXIS 21010, at *10 (E.D. Pa. Nov. 13, 2003). We believe the "modest factual showing" standard—which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions—best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[ ] the contours of [a collective] action at the outset."

Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011) (citing Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 172 (1989) (footnote omitted).[8]  "At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims…. The Court does not, however, review Plaintiff's evidence in a vacuum.  It reviews Plaintiff's evidence in light of the evidence submitted by Defendants."  Holley v. Erickson Living, 2012 WL 1835738, at *4 n.4 (E.D. Pa. May 21, 2012) (citations omitted).  Plaintiffs must

---

[8] On June 25, 2012, the Supreme Court granted the petition for writ of certiorari in Symczyk. 2012 WL 609478 (S.Ct. June 25, 2012).  However, the holding in Symczyk concerns whether an FLSA collective action becomes moot when the putative representative receives a Rule 68 offer of judgment in full satisfaction of her individual claim prior to moving for conditional certification and no other potential plaintiff has opted into the suit. The substantive law concerning FLSA collective actions is not at issue.

"'make a modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted).

The issue in this case is whether Plaintiffs have satisfied the "modest factual showing" necessary to obtain conditional certification of the proposed collective action.[9] Defendant opposes conditional certification of the "off-the-clock" claims on the following grounds: 1) Hall and McCombs cannot share temporal similarity with other potential plaintiffs because neither of them worked as a security officer for Guardsmark within three years of the date a conditional certification order might be granted (both had left by July 2009); 2) the only declarations they submit are their own, which contain inadmissible hearsay and contradict testimony they gave at their depositions, they have not identified any other potential plaintiffs and in fact they admit that they spoke to no one else, and by contrast Guardsmark has submitted 7 declarations of other individuals who deny their claims; 3) off-the-clock cases are particularly ill-suited to collective action treatment because they require substantial individualized analysis and both Hall and McCombs admitted that they did receive overtime pay when they requested it; 4) they offer no evidence of a directive not to submit additional time other than their allegation that they were told this by supervisor Katie Bohnke at the facility where they worked, and they admit they did not speak to anyone at other Guardsmark offices; 5) they offer no evidence of common duties and in fact each guard job assignment is different; 6) their allegations of pre-shift and post-shift work is de minimis and since McCombs was Hall's supervisor there is no evidence that

_____

[9] While the motion was under advisement, the Court of Appeals issued an opinion deciding that the standard for the <u>second</u> stage of a collective action is whether the named plaintiffs have demonstrated, by a preponderance of the evidence, that they are similarly situated to the proposed opt-in plaintiffs based upon an ad-hoc approach considering many factors. <u>Zavala v. Wal-Mart Stores, Inc.</u>, 2012 WL 3217522 (3d Cir. Aug. 9, 2012). That issue is not presented in this case.

Guardsmark "suffered" or "permitted" it; and 7) their pass-on claims are undermined by their own deposition testimony. The Court need not address all of these arguments.

Temporal Similarity

Defendant argues that Hall and McCombs would not share temporal similarity with the individuals to whom they propose to send notice because the FLSA requires that plaintiffs opt in within three years of the date they were subjected to the policy that allegedly violated the statute, yet neither Hall nor McCombs was a Guardsmark security guard after July 2009. Plaintiffs respond that the policies at Guardsmark have not changed since that time.

The FLSA requires that actions be filed within two years of a violation, or three years if plaintiffs allege a willful violation of the statute. 29 U.S.C. § 255(a). In the case of a collective action: "For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, the action commences only upon the filing of a written consent. Id. § 256(b)." Symczyk, 656 F.3d at 200. One of the factors for a court to consider in determining whether the named plaintiffs are similarly situated to the proposed class members is "the extent to which the claimed discrimination occurs during different time periods and by different decision-makers." Karlo v. Pittsburgh Glass Works, LLC, 2012 WL 1621265, at *13 (W.D. Pa. May 9, 2012) (citation omitted).

Thus, even if notice were to be sent out immediately, no individual could opt into this matter until sometime in August 2012. This would mean that the class would consist of Guardsmark security guards asserting FLSA violations beginning August 2009 and thereafter. However, Hall's employment with Guardsmark ended in July 2009 (Hall Dep. at 36) and McCombs only worked as a security guard until August 2008 (McCombs Decl. ¶ 2).[10] In

---

[10] Although McCombs worked as a supervisor at Guardsmark until July 2009, he acknowledges

12

addition, Katie Bohnke left Guardsmark in March 2009 (Hall Dep. at 17). Defendant contends that, based on these facts, Plaintiffs have made no showing that the situation at Guardsmark was substantially similar in August 2009 to what it was when Hall and McCombs were employed as security guards. Or, to put the matter slightly differently, the proposed class could not include Hall and McCombs and Plaintiffs have not suggested any other class representative.

At the hearing,[11] Plaintiffs contended that Defendant was attempting to benefit from the fact that it delayed this case to the point where Hall and McCombs could no longer represent the class. Defendant responds that it raised this issue in a conference call with Plaintiffs' attorneys on January 10, 2012 and that, in a response to a motion to compel filed on February 21, 2012, Defendant requested that "Plaintiffs be ordered to immediately file their Petition for Conditional Class Certification…." (ECF No. 42 at 13.)

Plaintiffs also argue that the "policy" at Guardsmark did not change merely because Katie Bohnke did not work there anymore. However, as Defendant notes, Plaintiffs have provided no basis from which a conclusion could be drawn that supervisors other than Bohnke were instructing other Guardsmark security guards to ignore the company's written policy and arrive at work 15 minutes early. See Jenkins v. TJX Companies, Inc., 2012 WL 109964, at *5 (E.D.N.Y. Mar. 31, 2012) (when plaintiff could only show that he was subjected to an illegal application of a common legal policy, conditional certification denied); Thompson v. Speedway Superamerica LLC, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (when plaintiffs did not submit evidence that the reason why they were not compensated for certain tasks was because of a corporate design, but could be because of human error or a rogue store manager, they could not

---

that he cannot be a class member as a supervisor and only seeks recovery for the time he spent as a security guard until August 2008.
[11] Plaintiffs' reply brief contained no response to this argument.

obtain conditional certification).

In their most recent filing, Plaintiffs cite two cases from the Eastern District of Pennsylvania, Holley v. Erickson Living and Outlaw v. Secure Health L.P., in which, they contend, the courts granted conditional certification based on the plaintiffs' declarations, which were "virtually identical to Plaintiffs' declarations in this case." (ECF No. 65 at 2 n.1 & Exs. A, C, D, E.) However, as Defendant notes, both Holley and Outlaw were employed at their respective employers within 3 years of the date the conditional certification decisions were issued, and thus the temporal similarity problem was not presented.[12] In addition, Holley stated that <u>all</u> employees were required to punch in to the timekeeping system during a seven-minute window before their start time and Outlaw stated that she was told by <u>multiple</u> supervisors and managers to report to work at least ten minutes before their start time (and this allegation was further supported by the time cards submitted); whereas in this case both Hall and McCombs indicated in their depositions that the instructions to report early and only put down "authorized hours" came only from Katie Bohnke.

The Court finds Defendant's temporal similarity argument compelling and sufficient to deny Plaintiffs' motion for conditional certification. Plaintiffs have not adequately responded to the argument that their case depends not only on Guardsmark's written policies (which comply with the FLSA), but also on their contention that Katie Bohnke told them in effect to disregard these written policies and work additional time without compensation. They have not explained how they can compare themselves to other employees who worked for Guardsmark after they had left and after Bohnke had left, with no evidence that other supervisors issued the same oral

---

[12] Holley was employed until September 2010 and conditional certification was granted on May 18, 2012 (ECF No. 65 Ex. D ¶ 1); Outlaw was employed until January 27, 2011 and conditional certification was granted on August 2, 2012 (ECF No. 65 Ex. E ¶ 2).

instructions.  Nevertheless, the Court will also proceed to analyze Plaintiffs' evidence, which is also found wanting.

<u>Lack of Support</u>

Defendant argues that Hall and McCombs have failed to point to any other individuals who would join the proposed collective action because the only declarations they have submitted are their own, which contain hearsay, conflict with the testimony given at their depositions and are contradicted by affidavits Defendant has submitted from 7 other Guardsmark employees. The Court need not address Defendant's evidence, because Plaintiffs bear the burden of demonstrating similarity and their evidence is insufficient to do so.

<u>Affidavits of Other Employees</u>

Defendant notes that Plaintiffs have submitted only their own affidavits.   In addition, Defendant notes that Hall and McCombs stated at their depositions that they have not talked to any other employees since leaving Guardsmark so they have no knowledge of others interested in joining in the litigation.  (Hall Dep. at 16-17; McCombs Dep. at 105.)  Plaintiffs respond that there is no "rule" requiring them to proffer a certain number of affidavits of other potential plaintiffs.

"A number of factors are relevant at the first step, including whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; ... whether evidence of a widespread discriminatory plan was submitted; and whether as a matter of sound case management; ... a manageable class exists."  <u>In re: Enterprise Rent-a-Car Wage & Hour Employment Practices Litig.</u>, 2010 WL 3447783, at*20 (W.D. Pa. Aug. 13, 2010) (Conti, J.) (citations omitted).  Judge Conti further noted that: "Many courts finding insufficient evidence of other potential class members at the first step were presented with a nominal number of

affidavits that made broad allegations about the treatment of other employees." Id. at *21.

"Affidavits from potential class members affirming their intention to join the suit are ideal for

analysis of whether the 'putative class members were together the victims of a single decision,

policy, or plan.'" Morales v. Thang Hung Corp., 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14,

2009) (quoting Simmons v. T-Mobile USA, Inc., 2007 WL 210008, at *9 (S.D. Tex. Jan. 24,

2007)).

Plaintiffs' reply to this argument is to contend that "courts in this Circuit do not consider

whether the record contains multiple supporting declarations from absent class members in

ruling on conditional certification." (ECF No. 62 at 2.) In response to Defendant's citation to

Judge Conti's statement in the Enterprise case, Plaintiffs argue that:

> this reference is significantly undermined by the fact that the court's reliance on
> class member declarations at conditional certification was based solely on two
> Michigan district court rulings (from 2004 and 2007), and by the fact that no
> FLSA opinion filed in Pennsylvania since 2010 has cited this case, affirmed this
> proposition or held that conditional certification should only be granted where the
> plaintiff has introduced a sufficient number of class member affidavits.

Id. at 3 n.1.

There are three fundamental errors with this argument. First, the FLSA is a federal law

that applies throughout the United States. The only court whose holdings bind this Court is the

Court of Appeals for the Third Circuit and the Symczyk case has been cited for all relevant

points contained therein. Every other opinion—from any federal court—is merely a decision to

be considered if it is well-reasoned and aids this Court in reaching a conclusion in this case.

There is no such thing as "the law of the Circuit" with respect to considering affidavits from

potential plaintiffs. Second, it is of no consequence whether Judge Conti's opinion has been

cited frequently, rarely or not at all. And Plaintiffs are incorrect that no FLSA opinion in

Pennsylvania refers to the presence of affidavits as a factor to consider. See Karlo, 2012 WL

1621265, at \*13 (Fischer, J.) (one of the factors is "whether the plaintiffs have sufficiently pled and supported by affidavits, depositions, and the like that defendant's decision-makers have articulated and manifested a clear intent to [engage in policies that violate the statute.]")  Third, Plaintiffs' reference to "a sufficient number" of potential plaintiff affidavits is a red herring, because no case holds that a certain number is sufficient.  More importantly, they have proffered <u>no</u> affidavits, and thus their argument that their evidence cannot be found insufficient because they have not submitted "enough" is a straw man.

This Court is <u>not</u> holding that Plaintiffs are required to submit the affidavits of other Guardsmark employees who would be potential plaintiffs in order to obtain conditional certification.  Rather, the Court is merely concluding that the presence of such affidavits would bolster Plaintiffs' motion for conditional certification and that the absence of such affidavits weakens their case.  <u>See</u> <u>Bell v. Citizen Fin. Group, Inc.</u>, 2010 WL 3463300 (W.D. Pa., Sep. 2, 2010) (Lancaster, C.J.) (conditional certification granted based on affidavits of 8 opt-in plaintiffs); <u>Lepkowski v. Telatron Marketing Group, Inc.</u>, 766 F. Supp. 2d 572 (W.D. Pa. 2011) (McLaughlin, J.) (conditional certification granted based on affidavits of 9 opt-in plaintiffs); <u>Burkhart-Deal v. CitiFinancial, Inc.</u>, 2010 WL 457127, at \*4 (W.D. Pa. Feb. 4, 2010) (Ambrose, J.) (conditional certification granted based on affidavits of 10 opt-in plaintiffs); <u>Holley</u>, 2012 WL 1835738, at \*4 (declarations of named plaintiff and one opt-in plaintiff regarding pre-shift work sufficient).

In <u>Stanislaw v. Erie Indemnity Co.</u>, 2009 WL 426641 (W.D. Pa. Feb. 20, 2009), Judge McLaughlin held that the plaintiff offered only his own affidavit, which contained hearsay insofar as it related to others, and referenced a lawsuit filed by a former co-worker that was dismissed as time-barred and therefore that person could not be considered similarly situated to

him. Judge McLaughlin denied the motion for conditional class certification without prejudice. The plaintiff then conducted limited discovery and submitted an amended motion for class certification, which contained deposition testimony from other Material Damage Adjusters who worked in the same location and stated that they worked overtime and were told by their supervisors not to submit it, and the court held that this evidence was sufficient to make a modest factual showing and granted conditional certification. Stanislaw v. Erie Indemnity Co., 2009 WL 3030298 (W.D. Pa. Sep. 17, 2009). See also Williams v. Securitas Security Servs., 2011 WL 4544009, at *1 (E.D. Pa. Oct. 3, 2009) (refusing reconsideration of order denying conditional certification of pre and post-shift claims based upon "three threadbare declarations" of named plaintiffs); Khan v. Airport Mgmt. Servs., LLC, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011) (finding it "telling" that, after five months of preliminary discovery, plaintiff was unable to produce a single other individual interested in participating in the case); Wright, 2010 WL 3363992, at *4 (conditional certification denied when plaintiff could not name a single other person subjected to defendant's alleged FLSA violations).

As Defendant notes, although this case is at the notice stage, substantial discovery has occurred: four depositions (two by the Plaintiffs and two by the Defendant), and Plaintiffs have served three sets of interrogatories and three requests for production of documents. (ECF No. 67 Exs. 4, 5). See Harriel v. Wal-Mart Stores, Inc., 2012 WL 2878078, at *5 (D.N.J. July 13, 2012) (examining record as produced in discovery to conclude that plaintiff failed to make a modest factual showing because the "evidence fails to show how the plaintiff and others were 'similarly subjected to an improper compensation practice' by the defendant).

Hearsay

Defendant points out that the declarations of Hall and McCombs contain hearsay as to

what they "believe" about other Guardsmark employees.  See Hall Decl. ¶¶ 16, 22, 32  (she believes that other Guardsmark security officers were subjected to the same pre-shift, post-shift and uniform policies as she was); McCombs Decl. ¶¶ 16, 22, 32 (same).  Plaintiffs maintain that they are allowed to rely on such evidence at this stage of the proceedings.

"Only admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA."  Kuznyetsov v. West Penn Allegheny Health Sys., Inc., 2009 WL 1515175, at *3 (W.D. Pa. June 1, 2009) (Ambrose, C.J.) (quoting Stanislaw, 2009 WL 426641, at *2.  See also Karlo, 2012 WL 1621265, at *11; Wright, 2010 WL 3363992, at *4; Ulysse v. Divosta Bldg. Corp., 2006 WL 3618449, at *2 (S.D. Fla. Dec. 11, 2006); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005); Richards v. Computer Sciences Corp., 2004 WL 2211691, at *1 (D. Conn. Sep. 28, 2004).

Plaintiffs cite cases that apply a relaxed evidentiary standard and allow the consideration of hearsay at the conditional certification stage.  See Jewell v. Aaron's, Inc., 2012 WL 2477039, at *5 n.6 (N.D. Ga. June 28, 2012); Zaniewski v. PRRC Inc., 2012 WL 951936, at *6-7 (D. Conn. Mar. 20, 2012); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 402-03 (S.D.N.Y. 2012); Rosario v. Valentine Ave. Disc. Store Co., 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011); Jesiek v. Fire Pros, Inc., 275 F.R.D. 242, 246-47 (W.D. Mich. 2011); Burdine v. Covidien, Inc., 2011 WL 2976929, at *1 (E.D. Tenn. June 22, 2011).

This Court is not holding that "the law of this Circuit" prohibits Plaintiffs from relying on hearsay in their affidavits, although it is noted that Plaintiffs have failed to cite a single case from within the Third Circuit that so holds.  Rather, the Court concludes, based upon a review of many decisions discussing this issue, that the better-reasoned line of cases recognizes that hearsay should not be accepted in support of affidavits from the named plaintiffs for class certification.

To permit the named plaintiffs to obtain conditional certification by attesting to policies applied to them and then stating that they "believe" other employees were subjected to the same policies would in effect result in automatic preliminary certification, see Smith v. Sovereign Bancorp. Inc., 2003 WL 22701017, at *2-3 (E.D. Pa. Nov. 13, 2003), which is at odds with the modest factual showing standard approved of by the Court of Appeals in Symczyk.

In addition, and more significantly, Plaintiffs' statements that they "talked" to their co-workers about having to report to work 15 minutes before their shifts started are directly contrary to their deposition testimony. Hall was asked "Did you ever discuss this policy or the fact that Katie had told you to be there 15 minutes early with anyone else?" and she responded "no." (Hall Dep. at 20-21.) McCombs stated that, as a supervisor, he never told Hall or any of his other employees that they needed to report to work 15 minutes early. (McCombs Dep. at 107-08, 115-16; Hall Dep. at 24.) He was asked "Other than Katie Bohnke, did you ever have any discussions with anyone about reporting 15 minutes early?" and "Did you ever tell any of the employees you supervised that they needed to report 15 minutes early?" and he responded "no" to both questions. (McCombs Dep. at 107-08.) He also testified that he never had any discussions with his former supervisors about reporting to work 15 minutes early. (McCombs Dep. at 107.)

Plaintiffs contend that the Court should not determine credibility at this stage of the proceedings. However, the Court is not weighing Plaintiffs' declarations against those proffered by the Defendant to find one set more credible than the other. Rather, the Court is applying the sham affidavit doctrine, which states that "a court will disregard an affidavit that is inconsistent with an affiant's prior deposition testimony … unless the party relying on the affidavit in opposition to the motion can present a legitimate reason for the discrepancies between the

deposition and the affidavit." <u>Smith v. Johnson & Johnson</u>, 593 F.3d 280, 285 n.3 (3d Cir. 2010). Plaintiffs signed their declarations on May 11, 2012, but Hall was deposed on November 9, 2011 and McCombs was deposed on November 7, 2011. Thus, to the extent that the later-filed affidavits contain statements that contradict earlier sworn deposition testimony, Plaintiffs must at least explain the discrepancy. They have not done so and therefore, the statements that they talked to their co-workers will be disregarded.

In conclusion, with respect to Plaintiffs' claims of unpaid pre and post-shift work, they have failed to point to potential plaintiffs who would be temporally similarly situated, they have failed to proffer declarations from potential plaintiffs and they have relied upon their own declarations, which contain hearsay as to other employees and which are directly contradictory to their sworn deposition testimony with no explanation offered for the discrepancy. For all of these reasons, Plaintiffs have failed to make a modest factual showing that they are similarly situated to other potential plaintiffs and their motion for conditional certification relating to pre and post shift work will be denied.

<u>Washing Uniforms</u>

Plaintiffs contend that they were required to wear uniforms, that they had to wash these uniforms and that they were not compensated for the time spent on this task. Defendant argues that such time is not compensable under the FLSA and their allegations of a uniform maintenance policy are not susceptible of common proof.

Defendant cites the Department of Labor, Field Operations Handbook, which specifically provides that "the time spent in washing uniforms will not be considered hours worked for either [minimum wage] or [overtime] pay purposes." Department of Labor, Wage and Hour Division, Field Operations Handbook § 30c12(b)(5). In addition, it notes that the FLSA distinguishes

between "principal" activities and "preliminary" or "postliminary" activities, the latter of which "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2). Department of Labor regulations provide that preliminary and postliminary activities include "changing clothes, washing up or showering, and waiting in line to receive pay checks." 29 C.F.R. § 790.7(g). A number of courts have held that "unless the law, the employer, or the nature of the work requires that a preliminary or postliminary activity be performed on the employer's premises, the time spent on such activity is not compensable." DeKeyser v. Thyssenkrupp Waupaca, Inc., 747 F. Supp. 2d 1043, 1053 (E.D. Wis. 2010); Bamonte v. City of Mesa, 598 F.3d 1217 (9th Cir. 2010) (because police officers were not required to don and doff their uniforms and gear at the workplace, the time spent doing so was not compensable).

Plaintiffs have not alleged that Guardsmark required them to wash their uniforms at work and in fact both Hall and McCombs state that they were prohibited from maintaining their uniform components "on the clock" or at their worksites. (Hall Decl. ¶ 28; McCombs Decl. ¶ 28.)

In the Williams case, the court addressed the claims of the plaintiffs (security guards) for reimbursement for time spent washing their uniforms as follows:

> Plaintiffs have not made even a modest factual showing that all Securitas employees in Pennsylvania have similar claims for time spent maintaining their uniforms. Securitas employees explain that they wear a variety of uniforms depending on the need of the particular client whose facility they are guarding. Some clients require Securitas guards to wear a uniform referred to as a "military-style" uniform or alternately as a "hard look" uniform. This uniform consists of a shirt, pants, "bomber"-style jacket, tie, and belt. Other clients request Securitas guards wear a "lobby look" or "soft look" uniform, which consists of a shirt, pants, a blazer, and a tie. Many, possibly all, of the elements in each style of uniform are "wash and wear," meaning that the employee may wash and dry those

uniform elements in standard clothes washing machines and clothes dryers. In addition to these two standard uniforms, some clients require Securitas guards to wear "non-standard" uniforms. One example of a non-standard uniform referenced by an employee consisted of a polo shirt provided by either Securitas or the client, and black pants and black shoes supplied by the employee. At some Securitas client sites, employees are not required to wear any uniform at all and wear instead their own business-casual clothing. The array of uniforms worn by Securitas personnel suggests that the time involved in cleaning those uniforms will vary from guard to guard.

Moreover, no one who submitted a declaration to the court, including the plaintiffs, has stated that Securitas required uniforms to be ironed, commercially cleaned, or laundered with a particular frequency. Those guards who do iron their uniforms do so with differing levels of regularity. Some guards dry clean the "lobby look" blazer and the "military look" jacket, although others said they did not have those items cleaned commercially. The guards that do have the jacket or blazer cleaned professionally do so at varying intervals. Based on the facts before the court, the frequency with which uniforms are cleaned and ironed is entrusted to the individual employee's discretion and, as a result, varies from employee to employee. Thus, the court simply cannot infer that Securitas employees have similar claims for uncompensated time spent maintaining Securitas uniforms. Bamgbose [v. Delta-T Group, Inc.], 684 F. Supp. 2d [660,] 670 [(E.D. Pa. 2010)].

Williams, 2011 WL 3629023, at *5-6 (footnotes omitted). See also Hawkins v. Securitas

Security Servs. USA, Inc., 280 F.R.D. 388, 401-02 (N.D. Ill. 2011).

Plaintiffs respond that: 1) Defendant is really arguing that they have failed to state a

claim upon which relief could be granted and that such an argument is waived given that

Defendant has answered the complaint;[13] 2) resolving whether class members wore different

uniforms would require delving into the facts of the case which is premature absent discovery;

and 3) the declarations Defendant has introduced provide minimal details about employees'

uniform maintenance activities which are not entitled to deference and, in any event, competing

---

[13] Plaintiffs are incorrect when they contend that, by filing an answer to the complaint, Defendant has "waived" the argument that their uniform maintenance claim fails to state a claim as such a defense may be presented in a motion for judgment on the pleadings pursuant to Rule 12(c). Nevertheless, they are correct that the viability of their own uniform maintenance claim is not at issue in the context of this, their motion for conditional certification and it will not be discussed herein.

declarations do not weigh against conditional certification.

Again, the Court need not refer to Defendant's submissions, because Plaintiffs' submissions are insufficient to make a modest factual showing that similarly situated security guards wore the same uniform and had the same unreimbursed maintenance costs. Hall testified that she washed her uniform (Hall Dep. at 132-34), that all her shirts were washable (Hall Dep. at 138) and in her declaration she does not even state that her uniform was similar to that of any other security officers in Pennsylvania. McCombs stated that he had long and short sleeved shirts and pants, that he washed the short sleeved shirts and that he had the long sleeved shirts and the pants dry cleaned twice a week. (McCombs Dep. at 224-25, 229.) However, he did not indicate that he was <u>required</u> to dry clean his uniform or launder it with a particular frequency.

Because the two named plaintiffs do not concur about the uniforms they wore or the maintenance required of them, the Court cannot infer that Guardsmark employees have similar claims for uncompensated time spent maintaining Guardsmark uniforms. As in the <u>Williams</u> case, Plaintiffs' evidence of substantial similarity for the uniform maintenance claim is insufficient. Therefore, with respect to the uniform maintenance claim, the motion for conditional certification will be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA HALL and WALTER MCCOMBS, on their own behalf and for all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | Civil Action No. 11-213 |
| | ) | Magistrate Judge Mitchell |
| GUARDSMARK, LLC, | ) | |
| Defendant. | ) | |

ORDER

AND NOW, this 17th day of August, 2012, for the reasons discussed above,

IT IS HEREBY ORDERED that the motion for order authorizing notice to

similarly situated persons pursuant to 29 U.S.C. § 216(b), filed by Plaintiffs Patricia Hall and

Walter McCombs (ECF No. 49), is denied.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge